The Honorable John C. Coughenour

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UNITED STATES OF AMERICA,

    Plaintiff,

  v.

CEDRICK B. ALDERMAN,

    Defendant.

CASE NO. CR06-0117C

ORDER

## I. INTRODUCTION

This matter has come before the Court on Defendant Alderman's (1) motion to dismiss the indictment (Dkt. No. 21); (2) motion for leave to file an overlength brief (Dkt. No. 22); and (3) memorandum presenting an additional basis upon which to dismiss the indictment (Dkt. No. 39).

Having carefully considered the papers filed by the parties in support of and in opposition to Defendant's motion to dismiss the indictment, the Court has determined that no hearing is necessary. The motion is DENIED. Defendant's motion for leave to file an overlength brief is GRANTED.

## II. BACKGROUND

The superseding indictment (Dkt. No. 27) charges Defendant Alderman as follows:

> On or about October 29, 2005, in King County, within the Western District of Washington, CEDRICK B. ALDERMAN, having been convicted of a crime of violence

ORDER - 1

> and of an offense under state law that would constitute a crime of violence if it occurred within the special maritime and territorial jurisdiction of the United States . . . did knowingly possess body armor sold and offered for sale in interstate and foreign commerce.
>
> All in violation of Title 18, United States Code, Section 931.

(Superseding Indictment 1–2.) The statute cited in the indictment states that "it shall be unlawful for a person to purchase, own, or possess body armor, if that person has been convicted of a felony that is a crime of violence." 18 U.S.C. § 931. "Body armor" is defined as "any product sold or offered for sale, in interstate or foreign commerce, as personal protective body covering intended to protect against gunfire, regardless of whether the product is to be worn alone or is sold as a complement to another product or garment." 18 U.S.C. § 921(a)(35).

Defendant's motion to dismiss the indictment asserts the following 5 grounds for relief: (1) Congress exceeded its power under the Commerce Clause in enacting § 931; (2) § 931 is unconstitutionally vague; (3) Defendant's due process rights were violated because he had no actual notice of the statute and because he relied on governmental advice that his possession of body armor was not prohibited; (4) application of the statute to Defendant violates the ex post facto clause of the Constitution; and (5) the indictment failed to charge an offense. This last ground is now moot — having been alerted to the potential problem, the government has since obtained a superseding indictment remedying the error. (*See* Reply 2.)

III.   ANALYSIS

    A.   *§ 931 and the Commerce Clause*

Defendant argues that Congress exceeded its power under the Commerce Clause of the United States Constitution in enacting 18 U.S.C. § 931. In making this argument, Defendant relies primarily on two cases, *United States v. Lopez*, 514 U.S. 549 (1995), and *United States v. Morrison*, 529 U.S. 598

ORDER - 2

(2000). However, neither *Lopez* nor *Morrison* are sufficiently analogous to the present case to control its outcome.

As a number of other courts considering the effect of *Lopez* on statutes criminalizing possession of certain items have noted, the *Lopez* Court expressly mentioned the absence of any "jurisdictional element which would ensure, through case-by-case inquiry, that the . . . possession in question affects interstate commerce." *See, e.g.*, *United States v. Kitsch*, 307 F.Supp.2d 657, 659 (E.D. Pennsylvania 2004) (citing *Lopez*, 514 U.S. at 561) (discussing § 931); *United States v. Marler*, 402 F.Supp.2d 852, 854 (N.D. Ohio 2005) (discussing § 931). *See also*, *United States v. Patton*, ___ F.3d ___, 2006 WL 1681336 at *14 (10th Cir. 2006) (also addressing constitutionality of § 931) (recognizing that the "principal practical consequence of a jurisdictional hook is to make a facial constitutional challenge unlikely or impossible"); *United States v. Jones*, 231 F.3d 508, 514 (9th Cir. 2000) (rejecting a *Lopez* challenge to § 922(g)(8) prohibiting persons subject to a domestic violence protection order to possess a firearm because "unlike the Gun-Free School Zones Act, [§ 922(g)(8)] contains a jurisdictional element explicitly requiring a nexus between the possession of firearms and interstate commerce"). Unlike the statute in *Lopez*, the body armor statute at issue here regulates only the possession of body armor "sold or offered for sale, in interstate or foreign commerce." 18 U.S.C. § 921(a)(35). *Morrison* is similarly inapposite. Indeed, the Ninth Circuit in *Jones* stated, "[W]e are not prepared to say that the teachings of *Morrison* apply to statutes . . . that do contain a precise statement of a jurisdictional element." 231 F.3d at 514–15. For these reasons, the Court finds that the analyses and holdings in *Lopez* and *Morrison* do not control this question.

Rather than relying on *Lopez* and *Morrison*, the Court's decision today relies on *United States v. Jones*, a Ninth Circuit case reaffirming the constitutionality of a closely-analogous statute, 18 U.S.C. § 922(g), prohibiting convicted felons and other classes of persons from possessing firearms, and takes

guidance from *Kitsch*, *Marler* and *Patton*, three cases from other jurisdictions which upheld the constitutionality of 18 U.S.C. § 931. Under the reasoning in *Jones*, § 931's jurisdictional requirement provides a sufficient nexus between the body armor in question and interstate commerce. *See* 231 F.3d at 514 (explaining that a functionally identical jurisdictional element in § 922(g) "can rationally be seen as regulating the interstate transportation of firearms and ammunition").[1]

Defendant argues that the jurisdictional element in § 922(g), which states that it is unlawful for a prohibited person to "possess in or affecting interstate commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce" is fundamentally different than the hook in § 931, which requires only that the possession be of body armor sold or offered for sale in interstate or foreign commerce. The Court finds that this is a distinction without a difference. The *Jones* Court explained that even if *Lopez* were to be applicable, that § 922(g) "can . . . be seen as falling within the third [basis for jurisdiction under the Commerce Clause], which requires only a *minimal nexus that the firearm in question have moved in interstate commerce at some time*." 231 F.3d at 514 (emphasis added). In other words, the *Jones* Court utterly ignored the language so relied on by Defendant to establish the difference between § 922(g) and § 931, and only considered the language requiring that the firearm have moved in interstate commerce.

Defendant also argues that § 931 is not constitutionally analogous to the federal firearm statutes because where the firearm statutes form "an essential part of a larger regulation of economic activity," the body armor statute does not. (Reply 4.) Defendant cites to *Lopez* and *Morrison* in arguing that what he characterizes as an isolated statute ought to be analyzed under a different framework than was applied by the *Jones* Court in analyzing § 922(g). However, as this Court has already pointed out,

---

[1] *Kitsch* and *Marler* both make this argument. *Patton*, though finding in dicta that § 931's jurisdictional hook is insufficient under *Lopez*, found that § 931 was constitutional under *Scarborough v. United States*, 431 U.S. 563 (1977) (assuming that Congress could regulate firearms solely because they had previously moved in interstate commerce), which it held to be unaffected by *Lopez* and its progeny.

ORDER - 4

*Lopez* and *Morrison* are not applicable to this case. Moreover, the *Jones* Court made no reference to the larger context of § 922(g) in making its ruling. Accordingly, assuming for argument's sake that Defendant's characterization of § 931 as a standalone statute is correct, the Court finds that § 931's isolation is neither relevant nor material.

For the foregoing reasons, the Court, bound by *Jones* and guided by *Kitsch*, *Marler* and *Patton*, finds that Congress did not exceed its power under the Commerce Clause in enacting § 931. Furthermore, like the *Marler* Court, the Court finds that "prohibiting possession by felons limits the market for body armor, and discourages shipping, transporting, and receiving body armor in or from interstate commerce." 402 F.Supp.2d at 854. Therefore, even if Defendant's possession of the body armor was purely intrastate, Congress had the power to regulate this activity.

B.   Due process

1.   *Vagueness*

Defendant challenges § 931's definition of "body armor" as unconstitutionally vague. "Body armor" is defined as "personal protective body covering intended to protect against gunfire." 18 U.S.C. § 921(a)(35). According to Defendant, the statute does not describe with sufficient detail what constitutes "body armor" or "gunfire," nor does it specify who should have intended that the covering protect against gunfire. In support of his argument, Defendant points to more detailed state body armor statutes.

In the Ninth Circuit, "[t]o avoid unconstitutional vagueness, [a statute] must (1) define the offense with sufficient definiteness that ordinary people can understand what conduct is prohibited; and (2) establish standards to permit police to enforce the law in a non-arbitrary, non-discriminatory manner." *Nunez by Nunez v. San Diego*, 114 F.3d 935, 940 (9th Cir. 1997). "[I]t is well established that

ORDER - 5

vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in light of the facts of the case at hand." *United States v. Powell*, 423 U.S. 87, 92 (1975).

Here, the Court finds that as applied to the facts of this case, § 931 is not vague. Defendant, when confronted by Officer Reyes with the fact that he was wearing a bulletproof vest, did not say or do anything suggesting that he doubted that what he was wearing was a bulletproof vest. Indeed, Defendant's response to Officer Reyes included a statement to the effect of "a lot of people have been shot in this neighborhood lately." Defendant's argument that his vest contained a label stating "WARNING: NOT INTENDED TO PROTECT THE WEARER FROM RIFLE FIRE, SHARP-EDGED OR POINTED INSTRUMENTS" (Def.'s Memo re: Vagueness 3) does nothing to bolster his position. If anything, a reasonable person would understand that the vest, though protective against other kinds of fire (say, handgun fire or shotgun fire), would not protect the wearer against rifle fire. Given all of these factors, it is clear to the Court that Defendant knew he was in possession of body armor, as defined by § 931. Accordingly, the Court finds that Defendant's void-for-vagueness challenge fails.

Defendant's comparison of § 931 to state body armor statutes does not alter the Court's finding. "The fact that Congress might, without difficulty, have chosen clearer and more precise language equally capable of achieving the end which it sought does not mean that the statute which it in fact drafted is unconstitutionally vague." *Powell*, 423 U.S. at 92 (citing *United States v. Petrillo*, 332 U.S. 1, 7 (1947)). Therefore, this argument on its own is insufficient to demonstrate that the statute is unconstitutionally vague.

    2.    *Notice to Defendant*

Defendant argues that application of § 931 is one of those rare cases in which due process requires that he have had actual notice of the prohibited behavior.

Generally, "ignorance of the law is no excuse." *Cheek v. United States*, 498 U.S. 192, 199 (1991). However, the Supreme Court has recognized that there may be exceptions to the general principle that ignorance of the law is not an excuse. *Lambert v. California*, 355 U.S. 228 (1957). The issue is whether the narrow parameters of the exception drawn in *Lambert* could apply here.

Defendant contends that unlike in *United States v. Freed*, 401 U.S. 601 (1971) (involving possession of a hand grenade) or *United States v. Hancock*, 231 F.3d 557 (9th Cir. 2000) (involving possession of a firearm), there is nothing inherently dangerous about body armor that should have caused him to be aware that he might have been engaging in prohibited behavior.

The Ninth Circuit has clearly stated that "[t]his circuit has refused to extend *Lambert* to situations that involved any element of 'active' — as distinct from 'merely passive' — behavior." *Hancock*, 231 F.3d at 564. The *Hancock* Court went on to note that in the Ninth Circuit, possession of firearms has been held to be "active" conduct. *Id*. Here, Defendant points out that possession of body armor is qualitatively different from possession of a firearm. Whereas possession of a firearm could reasonably be characterized as an aggressive measure, possession of body armor is purely defensive and nothing more. However, this does not change the fact that the act of acquiring and possessing body armor is "active" conduct, rather than mere "passive" conduct, like the failure to register considered in *Lambert*. For this reason, the Court finds that *Lambert* cannot be applied to this case.

The Court recognizes that *Hancock* distinguished *Lambert* on two bases: (1) "active" versus "passive" conduct, and (2) whether the defendant had any reason at all to consider the possibility that the action being taken might be illegal. 231 F.3d at 564. Although *Hancock* discussed both of these bases, *Hancock* did not suggest that the active conduct involved had to be of a type that would give a defendant a reason to consider the possibility of illegality. Rather, *Hancock*'s discussion of the two

ORDER - 7

bases was disjunctive. Therefore, the Court need not address Defendant's contention regarding whether he had any reason to know that owning body armor might be illegal.[2]

For the reasons stated above, the Court finds that prosecution of Defendant under § 931 does not violate his due process rights.

    C.    *Ex post facto*

Defendant argues that the body armor he possessed "was manufactured and 'sold or offered for sale' well before November 2, 2002," the effective date of the body armor statute, and that enforcement of § 931 against him violates the Ex Post Facto Clause. The government responded, and Defendant failed to deny, that the vest seized from Defendant contains a label indicating that it was manufactured on November 4, 2002. Therefore, even assuming without finding that Defendant's argument is correct, *i.e.*, that the date of manufacture or sale of the body armor is important, rather than when a defendant is in possession of the vest, applying § 931 to Defendant does not violate the Ex Post Facto Clause.

IV.   CONCLUSION

In accordance with the foregoing, the Court hereby DENIES Defendant's motion to dismiss the indictment.

SO ORDERED this 27th day of June, 2006.

                                                 */s/ John C. Coughenour*
                                                 UNITED STATES DISTRICT JUDGE

---

[2] The Court notes, however, that as in *Hancock*, Defendant having been convicted of the triggering offense and having "removed himself from the class of ordinary and innocent citizens," he could reasonably have been expected to know that his conduct was subject to additional restrictions. Furthermore, the Court finds Defendant's argument regarding the fact that his probation officer had not told him that he was prohibited from owning body armor and construing that omission, in light of the fact that there was a detailed list of prohibited items, as permission to own body armor, unpersuasive.

ORDER - 8